UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ERNESTO CAPPONE,

            Plaintiff,

v.                                                      **CASE NO.:**


WILLIAM MORRISSEY,                     **JURY TRIAL DEMAND**
MICHAEL GALLO,
KEVIN KIM,
LIBERTY MERCHANT GROUP,
MERCHANT SOLUTIONS GROUP,
And WORLD BUSINESS LENDERS LLC,

            Defendants.
_____/


## <u>ORIGINAL COMPLAINT</u>
**(*RICO Action*)**
*(Federal Racketeering Influence & Corrupt Organization Act; 18 U.S.C. § 1961 et seq.)*
*(N.Y. GBS. LAW § 349 : NY Code - Section 349: Deceptive acts and practices unlawful)*
*(Fraud In The Inducement and (Common Fraud)*
*(Common Law Fraud)*
*(Civil Conspiracy)*
*(Breach of Contract)*

# TABLE OF CONTENTS

Preamble…………………………………………………………………………p.3

Jurisdiction and Venue…………………………………………………………..p.3

Nature of Action and Relief Sought…………………………………………..p.3

Parties…………………………………………………………………………p.4

General Allegations…………………………………………………………… p.5

Count I.        Federal Civil RICO § 1962(c))……………………………….... p.19

     Racketeering Act I        (Mail/Wire Fraud)……………………………....p.20
     Racketeering Act II      (Title 18 U.S.C. § 1957 & 2)…………………… p.22
     Racketeering Act III     (Title 18 U.S.C. § 1956 & 2………………………  p.24

Count II.       Federal Civil RICO Conspiracy – 1962(d) & 1964……………………… p.27

     Racketeering Act I        (Mail/Wire Fraud)………………………………....p.28
     Racketeering Act II      (Title 18 U.S.C. § 1957 & 2)…………………… p.30
     Racketeering Act III     (Title 18 U.S.C. § 1956 & 2…………………………  p.32

Count III.      N.Y. GBS. LAW § 349 : NY Code - Section 349:
     Deceptive acts and practices unlawful………………………………………  p.34

Count IV.      (Fraud In The Inducement)……………………………………......   p.34

Count V.       (Common Fraud)…………………………………………………   p.36

Count VI.      (Civil Conspiracy)…………………………………………………   p.37

Count VII.     (Breach of Contract as to Morrissey, LMG, MSG)…………………………   p.38

Prayer …………………………………………..……………………………………p.40

Request for Jury………………………………………………………………p.41

Verification……………….…………………………………………………...p.41

## PREAMBLE

COMES NOW, the Plaintiff, ERNESTO CAPPONE ("Plaintiff") in the above entitled numbered cause who files this, his Original RICO Complaint ("complaint") against the WILLIAM MORRISSEY ("MORRISSEY"), MICHAEL GALLO ("GALLO"), KEVIN KIM ("KIM"), LIBERTY MERCHANT GROUP ("LMG"), MERCHANT SOLUTIONS GROUP ("MSG"), and WORLD BUSINESS LENDERS LLC ("WBL") (hereinafter referred to collectively as "Defendants"), all in their individual capacities, stating claims as follows:

### I.  JURISDICTION AND VENUE

1.      This action arises under the federal Racketeering Influence & Corrupt Organization Act, Title 18 U.C.S. §1961 et seq., and New York Civil Remedies For Criminal Practices Act, Fla. Stat. §772.101 (hereinafter collectively referred to as "RICO") .

2.      The jurisdiction of this Court is invoked in accordance with the provisions of Title 28 U.S.C. §§ 1331, 1332 and 1367.

3.      Venue is prescribed by the General Venue Statute, 28 U.S.C. § 1391, and it properly lies in the United States District Court for the Eastern District of New York, where each claim arose in its entirety.

### II.  NATURE OF ACTION AND RELIEF SOUGHT

4.      Plaintiff seeks treble damages under RICO, the return of Plaintiff's property and money in Defendants' possession and/or control, and the proceeds flowing from the use Plaintiff's property. Plaintiff seeks full compensation for the fraudulent transfer and theft of Plaintiff's property, the sum of which is in excess of $ 335,000.00; the imposition of a constructive trust as to all monies in the possession of Defendants, their nominees, agents, attorneys, representatives, trusts, which are or could be subject to this lawsuit; and other damages against all named Defendants in an amount which Plaintiff is entitled to as a matter of law and equity.

5.      Additionally, Plaintiff seeks equitable relief from this Court by means of an injunctive order enjoining the Defendants from moving, dissipating, spending, transferring, assigning, using as collateral or further concealing the origins of the proceeds generated from their fraudulent scheme targeting Plaintiff in his property as more fully detailed below. Plaintiff also seeks such injunctive orders as may be required to safeguard Plaintiff's property and/or recovering of his property during the pendency of this action. Plaintiff also seeks such injunctive orders to enjoin Defendants from future unlawful acts which could be construed or deemed in derogation of Plaintiff's rights and privileges under the laws and statutes and Constitution of the United States and State of New York. In accordance with the applicable law, Plaintiff prays that the Court determine and award costs and reasonable expenses of litigation including a reasonable attorney's fees as an incident of Plaintiff's costs.

### III.  THE PARTIES

6.      The Plaintiff, ERNESTO CAPPONE, is an adult male and citizen of the United States residing in the Eastern District of New York.

7.      Each of the individual Defendants named in the instant civil RICO action are being sued in their individual capacities.

8.      Defendant, WILLIAM MORRISSEY ("MORRISSEY"), at all times material to this action, conducted or caused to be conducted business in the Southern District of New York and elsewhere. Defendant was a knowing and willful participant and member of the Enterprise.

9.      Defendant, MICHAEL GALLO ("GALLO"), at all times material to this action, conducted or caused to be conducted business in the Southern District of New York and elsewhere. Defendant was a knowing and willful participant and member of the Enterprise.

10.      Defendant, , KEVIN KIM, ("KIM"), at all times material to this action, conducted or caused to be conducted business in the Southern District of New York and elsewhere. Defendant was a knowing and willful participant and member of the Enterprise.

4

11.     Defendant, LIBERTY MERCHANT GROUP ("LMG"), at all times material to this action, conducted or caused to be conducted business in the Southern District of New York and elsewhere. Defendant was a knowing and willful participant and member of the Enterprise.

12.     Defendant, MERCHANT SOLUTIONS GROUP ("MSG"), at all times material to this action, conducted or caused to be conducted business in the Southern District of New York and elsewhere. Defendant was a knowing and willful participant and member of the Enterprise.

13.     Defendant, WORLD BUSINESS LENDERS ("WBL"), at all times material to this action, conducted or caused to be conducted business in the Southern District of New York and elsewhere. Defendant was a knowing and willful participant and member of the Enterprise.

## IV.  GENERAL ALLEGATIONS

14.     All conditions precedent to the filing of this action has occurred, accrued, have been fulfilled or have been waived as a matter of law.

15.     In or about and between 2013 and 2015, Defendants WILLIAM MORRISSEY ("MORRISSEY"), MICHAEL GALLO ("GALLO"), KEVIN KIM ("KIM"), LIBERTY MERCHANT GROUP ("LMG"), MERCHANT SOLUTIONS GROUP ("MSG"), and WORLD BUSINESS LENDERS ("WBL") (collectively referred hereinafter as "Defendants"), together with others known and unknown, conspired and acted in concert with one another and aided and abetted each other to achieve a common goal which was to defraud Plaintiff and many other innocent victims of their property and money, via a *Ponzi Scheme*.

16.     During the execution of the fraudulent scheme and artifice by Defendants, Defendants used or caused to be used the mails and wires, all in violation of Title 18 U.S.C. §§ 1341, 1343 and 2. Further, in order to conceal the Plaintiff's monies, Defendants purchased real estate, property, vehicle(s) and/or used the money to pay bills, all in violation of Title 18 U.S.C. §§ 1956 and 1957 and 2. The Defendants aforenamed, together with the others unknown, by their

5

association in fact and agreements with one another to achieve the aforementioned common goals to defraud Plaintiff, constituted the "Enterprise" as that term is defined under Title 18 U.S.C. § 1964(4). The Defendants, individually and jointly conducted and managed, directly or indirectly in the affairs of the Enterprise as well as participated, directly or indirectly in the affairs of the Enterprise through a pattern of racketeering activities within the meaning of Title 18 U.S.C. §§ 1961(1)(A), (B), (D) and (E), 1961(5) and 1962(c) & (d), to-wit: multiple instances of mail and wire fraud, in violation of 18 U.S.C. § 1341, 1343 and 2; Multiple instances of money laundering in violation of Title 18 U.S.C. §§ 1956 and 1957; Multiple instances of theft, fraud, common fraud, felony theft in violation of New York criminal statutes.

17.     At all times relevant to this action, Plaintiff was a resident of Brooklyn, New York and operating a business in Manhattan, New York.

18.     At all times relevant to this action, MORRISSEY was the owner and operator of LMG and MSG.

19.     At all times relevant to this action, GALLO owned and operated *Driehaus Private Equity, LLC*.,.

20.     At all times relevant to this action, WBL was/is company whose headquarters was/is located in New York City. WBL touted itself as a provider of working capital to small businesses across the United States. WBL was founded in 2011.

**MSG/LMG, MORRISSEY AND GALLO TEAM UP TO INDUCE PLAINTIFF AND OTHERS SIMILARLY SITUTATED TO INVEST IN CAPITAL FUNDING SCHEME.**

21.     In or about 2009, MORRISSEY created a company known as MSG for the purposes of acquiring individuals looking for merchant cash advance which would be brokered out to third party lenders.

6

22.     In or about  2013, MORRISSEY created LMG for purposes of soliciting money from individuals, claiming the money would be used to provide capital funding to third party companies in exchange for third party companies assigning or selling its future revenue/sales of products and services, to LMG.

23.     MORRISSEY informed potential investors that GALLO was the owner of *Driehus Private Equity, LLC* and played a core role in providing funding and approving capital advances to companies who needed the capital funding. MORRISSEY told investors GALLO would provide the funding while MORRISSEY obtained the clients (or companies who needed capital funding). MORRISSEY represented to investors that the returns on the investors' contributions would be 40% plus over the term of the investment (the term being anywhere from two to four months).

24.     In or about 2013 and continuing thereafter, MORRISSEY, on behalf of MORRISSEY, GALLO, LMG, represented to individuals that the investment of money into the capital funding deals reliably yielded in excess of 40% returns over a 4-month period of time. Further, MORRISSEY stated their investment in the capital funding deals was secured by the third party company's future sales, invoices, revenues and billings.

25.     Based on MORRISSEY's representations and claims described in the preceding paragraphs, individuals began investing their hard earned savings and cash with MORRISSEY and LMG.

26.     However, unbeknownst to the investors, MORRISSEY, on behalf of LMG, MSG and GALLO, would use new investor money to pay other investors – the Ponzi scheme, and pay for his lavish lifestyle.

**MORRISSEY/LMG/GALLO TARGET PLAINTIFF – DEAL #1 OF PONZI SCHEME**

27.     In or about May, 2013, MORRISSEY invited Plaintiff and his family to a social gathering at MORRISSEY's lavish apartment located 44 Wall Street, NYC, commonly known as the Cipriani Building. Upon Plaintiff's arrival, MORRISSEY touted his financial success on the operations of his privately owned companies, LMG and MSG. MORRISSEY stated that with the help of GALLO and *Driehaus Private Equity, LLC*., he (MORRISSEY) would be able to transition LMG into a bank, with GALLO's connections to private equity money and hedge funds.

28.     MORRISSEY would show off his expensive watches valued in excess of $100,000.00 and a sneaker collection. He and his girlfriend Tatiana had very expensive clothes and shoes.

29.     MORRISSEY explained to Plaintiff that LMG and MSG provide working capital (money) to small and large companies ("client"). In exchange for receipt of the working capital, the client assigns or sells its future product sales or services to LMG and MSG at a substantial discount rate. MORRISSEY told Plaintiff that the discount rate is normally 40%, thus giving his companies LMG and MSG a 40% return on the working capital or money given to the client.

30.     MORRISSEY then offered Plaintiff to piggy back on some of his merchant cash advance deals, through LMG, with certain of his long time clients who would often renew their deals. MORRESSY stated these were all great clients and there would never be any problems or missed payments. MORRESSEY told Plaintiff he had deals all the time and that if he could help Plaintiff make extra money it's no problem for him to get Plaintiff involved. Plaintiff told MORRISSEY he (Plaintiff) was not in a position to gamble with savings (funds) needed for his three small children and wife.

31.     MORRISSEY stated to Plaintiff that a $25,000 contribution would yield a "40%

return" over 4 months." Based on the representations by MORRISSEY, Plaintiff gave

MORRISSEY a check in the amount of $25,000.00 on May 22, 2013 (hereinafter referred to as

"Deal #1")..

32.     On or about September 11, 2013 MORRISSEY, through LMG, sent or caused to

be sent a wire transfer in the amount of $10,000.00 to Plaintiff. MORRISSEY told Plaintiff this

wire transfer represented the return on Plaintiff's $25,000.00 contribution (investment).

MORRESSEY told Plaintiff that the client wanted to renew the "deal" and if Plaintiff wanted to

keep his $25,000.00 contribution in the renewed deal. Plaintiff stated "yes."

**DEAL #2 OF PONZI SCHEME**

33.     In January, 2014, MORRISSEY told Plaintiff that he (MORRISSEY) had another

opening in a separate capital funding or "deal" to a third party company which required Plaintiff

to provide a contribution of $40,000 for a 4-month term at 40% return on Plaintiff's contribution.

MORRISSEY told Plaintiff to "rollover" the $25,000.00 contribution, plus the $10,000.00 return

on the investment and add in another $5,000.00. On January 15, 2014, Plaintiff issued a personal

check # 208 in the amount of $5,000.00 to LMG (hereinafter referred to as "Deal #2)").

34.     On or about January 17, 2015, Plaintiff's personal check # 208 cleared Plaintiff's

bank.

35.     On or about May 13, 2014, MORRISSEY, through LMG, sent or caused to be

sent a wire transfer in the amount of $18,000.00 to Plaintiff. MORRISSEY told Plaintiff the

LMG's client (in Deal # 2) are renewing under same terms. MORRISSEY told Plaintiff his

$40,000.00 contribution would be "rolled over" and would yield a 42% return on Plaintiff's

contribution.

## DEAL #3 OF PONZI SCHEME

36.    In June, 2014, MORRISSEY contacted Plaintiff, via telephone, informing Plaintiff one of his (MORRISSEY) biggest and oldest client needed $300,000 in capital funding. MORRISSEY stated the client owned several Burger King Restaurants and was looking to expand the business. MORRISSEY said he was putting $100,000 of his own money in the deal (capital funding). MORRISSEY stated the deal was for 4-months and a return of 40% on Plaintiff's contribution of $100,000.00. MORRISSEY stated the return would be paid monthly to Plaintiff (hereinafter referred to as "Deal #3).

37.    Based on MORRISSEY's representations above, Plaintiff agreed to give MORRISSEY and LMG $100,000.00. MORRISSEY told Plaintiff the return to Plaintiff would be $10,000.00 per month for as long as MORRISSEY/LMG keeps the deal. MORRISSEY stated the client will mostly automatically renew the capital funding deal.

38.    On June 10, 2014, Plaintiff sent two wire transfers to LMG. The first wire transfer was in the amount of $25,000.00 withdrawn from Plaintiff's personal checking account to be credited to LMG bank account 4972759677 Citibank, and the second wire transfer was in the amount of $74,950.00 from Plaintiff's business account credited to LMG bank account 4972759677 Citibank.

## DEAL #4 OF PONZI SCHEME

39.    In August, 2014, MORRISSEY informed Plaintiff that another of his (MORRISSEY) huge clients "the Golf Guy" needed a deal (capital funding). MORRISSEY stated he was doing half the deal and asked if Plaintiff could do another $100,000.00 contribution in the deal with Golf Guy. MORRISSEY stated to Plaintiff the deal was for 4 months with a 42% return on Plaintiff's contribution over a 4-month period (*hereinafter referred to as "Deal #4")..

10

40.     Based on MORRISSEY's representations described above, Plaintiff agreed to provide a $100,000.00 contribution to MORRISSEY /LMG. MORRISSEY provided Plaintiff with the following wiring instructions to send the $100,000.00: LMG bank account 4972759677 Citibank.

41.     On August 15, 2014, Plaintiff wired the $100,000.00 from two of Plaintiff's bank accounts to LMG's bank account: (1) $53,000.00 from Plaintiff's checking account; and (2) $46,475.00 from Plaintiff's business account.

**DEAL #5 OF PONZI SCHEME**

42.     In late September, 2014, MORRISSEY asked Plaintiff if he (Plaintiff) was able to make a $50,000.00 contribution in another separate deal (capital funding). MORRISSEY stated the deal (capital funding) was for a 3-month period with a 40% return on Plaintiff's contribution. MORRISSEY told Plaintiff the client was a very good client of LMG. MORRISSEY told Plaintiff that Plaintiff had a $20,000.00 credit or payment due to Plaintiff, so Plaintiff only needed to wire transfer $30,000.00 (hereinafter referred to as "Deal #5")..

43.     On September 30, 2014, Plaintiff wire transferred $30,000.00 from Plaintiff's savings account credited to LMG bank account 4972759677 Citibank.

44.      On or about November 7, 2014, MORRISSEY issued or caused to be issued a check from Liberty Merchant Group LLC d/b/a Merchant Solutions Group in the amount of $20,000.00 to Plaintiff for return on the investments in the two separate $100,000.00 deals. Plaintiff deposited the check, however, the check was returned as insufficient funds.

45.     On December 8, 2014, MORRISSEY, through LMG (new bank account at TD Bank Acct # 4308329609, wire transferred $10,000.00 into Plaintiff's bank account.

46.     On December 9, 2014, MORRISSEY, through LMG (new bank account at TD Bank Acct # 4308329609, wire transferred $10,000.00 into Plaintiff's bank account.

## DEAL #6 OF PONZI SCHEME

47.     In December, 2014, MORRISSEY asked Plaintiff if he (Plaintiff) could do a small deal (capital funding) for $20,000.00 over 2-months at a 40% return on investment hereinafter referred to as "Deal #6"). Plaintiff told MORRISSEY that he (Plaintiff) needed the majority of his money back in February, 2014 for use as a down payment on a new home for his family. MORRISSEY told Plaintiff to just give him (MORRISSEY ) 30 to 60 day notice to return the funds without any problems.

48.     On December 23, 2014, Plaintiff wire transferred $20,000.00 to MSG's bank account at Bank of America, account #483009346832.

49.     In December, 2014, Plaintiff was due a return on his contributions on the two deals involving $100,000.00 contributions. When Plaintiff inquired of MORRISSEY  of the returns or checks, MORRISSEY told Plaintiff the payments by the clients were put on hold, but would resume in January, 2015.

50.     In January, 2015, Plaintiff contacted MORRISSEY, asking when Plaintiff would receive the return on his contributions. Plaintiff told MORRISSEY that based on his calculations, the return or money due Plaintiff was $70,000.00. MORRISSEY told Plaintiff he would receive the funds in a few days.

51.     After the expiration of a few days, Plaintiff contacted MORRISSEY everyday thereafter. MORRISSEY told Plaintiff each time Plaintiff made an inquiry that he (Plaintiff) would receive the funds in a few days.

52.     In late January, 2015, MORRISSEY, via telephone, notified Plaintiff that his company LMG was merging with a huge company known as World Business Lenders ("WBL). MORRISSEY stated he was meeting with Doug Naidus, the president of WBL. MORRISSEY told Plaintiff he (MORRISSEY) needed a few more days to return all of Plaintiff's funds (contributions) and returns on said contributions.

12

**WORLD BUSINESS LENDERS JOINS SCHEME TO DEFRAUD PLAINTIFF, -**
**RICO CONSPIRACY AND PONZI SCHEME**

53.     In late January, 2015, MORRISSEY, via telephone, notified Plaintiff that he was
merging with a huge company known as World Business Lenders (WBL). MORRISSEY stated
he was meeting with Doug Naidus, the president of WBL and their executive committee.
MORRISSEY told Plaintiff he (MORRISSEY) was receiving a large amount of cash and stock
WBL. MORRISSEY told Plaintiff he needed a few more days to return all of Plaintiff's funds
(contributions) and returns on said contributions.

54.     On February 1, 2015, MORRISSEY came to Plaintiff's bar/restaurant located at
310 Bowery Street New York. When Plaintiff asked MORRISSEY why Plaintiff had not
received his contributions and return on said contributions from MORRISSEY/LMG,
MORRISSEY stated he (MORRISSEY) would  ACH money to Plaintiff.

55.     On February 2, 2015, WBL and LMG issued a news release detailing WBL's
acquisition of LMG's business and MORRISSEY becoming part of WBL's executive team.

56.     Thereafter, Plaintiff received an email from a "Jaime Quero" with the extension to
the email address as @worldbusinesslenders, wherein Jaime Quero wrote that it was his fault for
Plaintiff not receiving the funds via ACH. In this email, Jaime Quero stated he got yelled at by
MORRISSEY for making the mistake.

57.     On February 10, 2015, after Plaintiff called, texted, and emailed MORRISSEY
about the return of his (Plaintiff's) money, MORRISSEY sent, via wires $10,000 to Plaintiff's
bank account. $5,000.00 was issued from the bank account of MSG and $5,000.00 from LMG's
bank account.

58.      Days later, Plaintiff met face-to- face with MORRISSEY. He (MORRISSEY)
told Plaintiff that Plaintiff would receive $25,000.00 per week for ten weeks to pay off the two
$100,000.00 deals plus interest. MORRISSEY stated the WBL would pay another $5,000.00 per

week to pay off the other deals Plaintiff entered into and made contributions. MORRISSEY

stated the payments to Plaintiff would commence a week later and be made via ACH.

59.     On February 15, 2015, WBL and LMG/MSG issued a news release detailing

WBL's acquisition of LMG/MSG's business and MORRISSEY becoming part of WBL's

executive team.  WBL issued the following news release:

> World Business Lenders (WBL) announced today the acquisition of
> certain business loan operations of Merchant Solutions Group (MSG).
> Billy Morrissey, the founder and CEO of Merchant Solutions Group, has
> joined WBL as Vice President and will lead a sales operation based at
> WBL's headquarters in midtown Manhattan. Seventeen former
> employees of MSG have moved with Morrissey to WBL to form the core
> of a new sales group managed by Morrissey.
>
> Over the past six years, under Morrissey's leadership, Merchant
> Solutions Group has arranged over $200 million in financing for more
> than 3,000 small and mid---sized businesses across the United States.
> Morrissey, who has been an innovative national leader in arranging
> alternative financing solutions for businesses stated: "It is well known in
> our industry that WBL has the strongest and most experienced
> leadership.  I welcome the opportunity to combine my team with one of
> the premier funders in our industry. I am honored to be part of WBL and
> play a role in growing and transforming the way small businesses are
> served. Being fully integrated into WBL's underwriting and funding
> operation will enable us to provide faster approvals and superior loan
> terms to business owners."
>
> Alex Gemici, Managing Director and Head of the Retail Division of
> WBL stated: "We are delighted that Billy, a respected industry veteran
> and leader, has chosen to join our growing company, and we are
> confident Billy and his team will make a meaningful difference in
> WBL's growth in 2015."

60.     After Plaintiff received no funds from WBL, or MORRISSEY or MSG or LMG,

Plaintiff demands of MORRISSEY to return all of Plaintiff's money. MORRISSEY  sends texts

and emails to Plaintiff that a $50,000.00 payment was made to Plaintiff, by electronically

transferring the funds into Plaintiff's bank account. MORRISSEY sends screen shots of the

transfer notification from the bank that the transfer was made into Plaintiff's bank account.

However, no funds were ever received by Plaintiff or sent by MORRISSEY or WBL or MSG or LMG.

61.      On February 17, 2015, Defendant KIM emailed Plaintiff with a payment schedule by WBL to Plaintiff, explaining that the payment schedule would be $25,000.00 per week to Plaintiff:

**Good Afternoon Ernic,**

**Here is a rough draft of what you requested for your review.**

**Kevin Kim**
**Kevin Kim**
**Analyst**
Email: kkim@wbl.com
Main: 212-220-8973
Fax:    646-417-5804

www.wbl.com

World Business Lenders, LLC
120 W. 45th St 5th Floor
NY, NY 10036

Date: 02/17/2015
Re: Existing Funded Deals
1. $100,000 principal investment with monthly interest payment of $10,000

2.  $100,000 principal investment with monthly interest payment of $10,000

3. $20,000 principal investment with quarterly interest payment of $10,500

4. $40,000 principal investment with quarterly interest payment of $16,800

5. $50,000 principal investment with bi monthly interest payment of $24,500

6. $20,000 principal investment with bi monthly interest payments of $9800
Principal investment $335,000

Interest payments owed thru Feb 2015 $91,600

Total outstanding $426,600

Additional Existing Deal: Payments Due Every Tuesday Effective 2/17/2015
$100,000 principal investment with weekly payments of $25,000, interest payments of $20,000

15

$100,000 principal investment with weekly payments of $25,000, interest payments of $20,000

Thank you very much

62.     On February 19, 2015, Defendant KIM emailed Plaintiff the following:

**From:** Kevin Kim <KKim@WBL.COM>
**Date:** February 19, 2015 at 3:03:09 PM EST
**To:** Ernie Cappone <erniecappone@gmail.com>
**Cc:** William Morrissey <WMorrissey@WBL.COM>

**Subject: Payment schedule**

Ernie here is the payment schedule. Once again I apologize for the delay.

Regards,

**Kevin Kim**
Processor

**World Business Lenders**        www.wbl.com
120 W. 45th St.                             Direct: (212) 220-8973
5th Floor                                      Fax: (646) 417-5804
        NY, NY 10036                              Email: kkim@wbl.com

Good Day,
Per our agreement hise is the proposed payment'schedule which will cover the principle as well as interest on both of the $100,000.00 investments. Thank You.

| February | AMOUNT |
|---|---|
| Tuesday 17th 2015 | $25,000.00 |
| Tuesday 24th 2015 | $25,000.00 |

| March | |
|---|---|
| Tuesday 3rd 2015 | $25,000.00 |
| Tuesday 10th 2015 | $25,000.00 |
| Friday 13th 2015 | $20,000.00 |
| Tuesday 24th 2015 | $25,000.00 |
| Tuesday 31st 2015 | $25,000.00 |

| April | |
|---|---|
| Tuesday 7th 2015 | $25,000.00 |
| Friday 10th 2015 | $20,000.00 |

63.     The purpose and effect of WBL and its employees KIM and Quero to sending emails from WBL to Plaintiff was to induce Plaintiff into believing his funds were secure and payments to Plaintiff was forthcoming, and the entire transactions were legitimate.

64.     Days later, MORRISSEY told Plaintiff that GALLO had put a few million into his company to fund deals, that GALLO had benefited from Plaintiff's contributions, and that GALLO would be issuing on March 1, 2015 a check for in excess of a million dollars to MORRISSEY which represented 2014 profits for the deals (capital funding) MORRISSEY made with funds from various individuals including Plaintiff. MORRISSEY stated he would pay Plaintiff in full from the funds received from GALLO.

65.     On March 1, 2015, MORRISSEY called Plaintiff, informing Plaintiff that he (MORRISSEY) received and deposited the check from GALLO. MORRISSEY stated to Plaintiff  he (Plaintiff) will receive $290,000.00 of the over $400,000.00 currently owed by WBL/LMG.

66.     The following Thursday, MORRISSEY called Plaintiff, stating the check from GALLO had not cleared.  MORRISSEY later sends a text to Plaintiff advising the funds won't be available until the following Monday.

67.     As a proximate result of the aforementioned racketeering acts of Defendants, Plaintiff was damaged in his person and property, to which Plaintiff is entitled to recover treble damages.

68.     As a direct and proximate acts of Defendants, together with others, Plaintiff was damaged in his person and property.

69.     In connection with the activities giving rise to this action, the Defendants acted with malice, insult, intent and knowledge, and with a wanton and reckless disregard of the rights of Plaintiff and others.  Furthermore, the acts of Defendants aforementioned were outrageous, atrocious, beyond all bounds of human decency, and utterly intolerable in a civilized society.

70.     During the relevant times, the Enterprise, which consisted of the group of the named Defendants herein, together with others and their association with one another and common goals, were engaged in interstate and foreign commerce.

71.     During the relevant times, in connection with the activities giving rise to this action, Defendants conspired with each other, and with others unknown, to engage in various activities set forth herein and aided and abetted one another in these activities, all as proscribed by 18 U.S.C. §§ 2, and 1962(c) and (d).

72.     During the relevant times, and in furtherance of and for the purpose of executing the scheme and artifice to defraud, Defendants on numerous occasions used and caused to be used mail depositories of the United States Postal Service by both placing and causing to be placed mail-able matter in said depositories and by removing and causing to be removed mail-able matter from said depositories, each such use of the mails in connection with the scheme and artifice to defraud and to obtain money by means of false pretenses, constituting the offense of mail fraud as proscribed and prohibited by 18 U.S.C. § 1341

73.     During the relevant times, and in furtherance of and for the purpose of executing the scheme and artifice to defraud and extort, Defendants, on numerous occasions, used and caused to be used wire communications in interstate and foreign commerce, by both making and causing to be made telephone calls and other wire communications, as proscribed and prohibited by 18 U.S.C. § 1343.

74.     During the relevant times, and in furtherance of and for the purpose of executing the scheme and artifice to defraud and extort money, Defendants caused and induced persons to travel in interstate and foreign commerce, and transported or caused to be transported goods and money of the value in excess of $200,000.00, or more, in interstate commerce, all as proscribed and prohibited by 18 U.S.C. § 2314

75.     During the relevant times, and in furtherance of and for the purpose of executing the scheme and artifice to defraud and extort money, and to obtain money by means of false pretenses, Defendants on numerous occasions engaged in transactions for the payment, receipt or transfer of Ten Thousand ($10,000.00) or more of United States money, and willfully caused a financial institution and/or bank and/or Plaintiff to file a Currency Transaction Report concerning the transaction in violation of 31 U.S.C. § 5313.

76.     During this relevant times, and in furtherance of and for the purpose of executing the scheme and artifice to defraud and extort money, and to obtain money by means of false pretenses, Defendants concealed the proceeds of their illegal activities by using said proceeds to purchase vehicles, jewelry, real estate, further the business and operations of Defendant MORRISSEY, GALLO, KIM, LMG, MSG, and WBL, intentionally, willfully and knowingly, all in violation of Title 18 U.S.C. §§ 1956 and 1957.

## COUNT I

## CIVIL RICO

### (Violation of 18 U.S.C. § 1962(c))

77.     The Plaintiff repeats and realleges the allegations contained in paragraph 1 through 76, inclusive, of this Complaint as if fully set forth herein.

78.     Plaintiff is a "person" within the meaning of Title 18 U.S.C. §§ 1961(3) and 1964(c).

79.     The Defendants,  WILLIAM MORRISSEY ("MORRISSEY"), MICHAEL GALLO ("GALLO"), KEVIN KIM ("KIM"), LIBERTY MERCHANT GROUP ("LMG"), MERCHANT SOLUTIONS GROUP ("MSG"), and WORLD BUSINESS LENDERS ("WBL"), are each a "person" within the meaning of Title 18 U.S.C. §§ 1961(3) and 1964(c).

80.     Section 1962(c) of RICO provides that: It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect,

interstate or foreign commerce, to conduct or participate directly or indirectly in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

81.     At all relevant times, MORRISSEY, GALLO, KIM, LMG, MSG, and WBL, together with others unknown were associated in fact and constituted an enterprise engaged in the and the activities of which affected, interstate and foreign commerce within the meaning of Title 18 U.S.C. §§ 1961(4) and 1964(c), and did conduct or participate, directly or indirectly, in the conduct of the affairs of the Enterprise through a pattern of racketeering activity within the meaning of Title 18 U.S.C. §§ 1961(1)(A), (B), (C), (D), and (E) and 1961(5) and 1962(c), to-wit:

## RACKETEERING ACT ONE

### *(Mail & Wire Fraud)*

82**.**     In or about and between 2011 and 2015, both dates being approximate and inclusive, within the Southern District of New York, and elsewhere, the Defendants MORRISSEY, GALLO, KIM, LMG, MSG, and WBL, together with members, participants and wrongdoers of the criminal Enterprise, did knowingly, intentionally, and willfully conspire to use and employ manipulative and deceptive devices and contrivances and directly and indirectly *(1)* employ devices, scheme and artifice to defraud Plaintiff; *(2)* to make untrue statements of material facts and omit facts to state facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and *(3)* to engage in acts, practices and courses of conduct which would and did operate as a fraud and deceit upon Plaintiff and the general public, in connection with the fraud and money laundering scheme, and theft of Plaintiff' property and monies, and by use of the instruments of communication interstate commerce and the mails, all in violation of F.S. § 910.15, § 817.034, § 817.03, § 817.15, § 817.40, § 817.41, § 817.411, Title 18 U.S.C. §§1341, 1343 and 2.

## OVERT ACTS

83**.**     In furtherance of the conspiracy and to affect the objects thereof, within the Southern District of New York, and elsewhere, the Defendants MORRISSEY, GALLO, KIM, LMG, MSG, and WBL, together with members and participants of the criminal Enterprise and others unknown, did commit and cause to be committed the following overt acts, among others:

84.     In or about and between 2011 and 2015, both dates being approximate and inclusive, Defendants aforenamed, together with others unknown, knowingly and willfully used or caused to be used telephones, wires, mails, and others electronic and communication devices to send or caused to be sent, among numerous others, the following:

a.     Multiple instances of Plaintiff sending multiple wire transfer of funds to LMG/MORRISSEY;

b.     Multiple instances of LMG/MORRISSEY sending wire transfers to Plaintiff;

c.     Multiple instances of LMG/MORRISSEY/KIM/WBL sending emails to Plaintiff relating to the Deals described above;

85.     The aforementioned racketeering/criminal acts were interrelated and were part of a common and continuous pattern. The acts were done in furtherance  of the goals of the Defendants aforenamed and the criminal Enterprise.

86.     Defendants, and the criminal Enterprise defrauded Plaintiff of his money and property by Plaintiff reasonably relied to his detriment on the misrepresentations, false and misleading statements and information created or caused to be created and disseminated by Defendants  aforenamed.

87.     As a direct and proximate result of the violations of the above cited state and federal criminal statutes, Plaintiff has suffered damages, including, but not limited to, the loss of money, the loss of interest thereon, distress, mental anguish, and non-pecuniary losses, the total amount which is in excess of $400,000.00.

88.     Each of the above acts of mail and wire fraud, though distinct, were related to one another and had the same or similar intent, results, accomplices, victims or methods of commission, to-wit: to defraud Plaintiff of his money and property by fraudulent representations of investing and return on said of investments.

89.     Each of the above related violations of New York criminal statutes cited above and federal criminal statutes Title 18 U.S.C. §§ 1341 and 1343 was repeated over a substantial period of time, beginning on or about November, 2011 and continuing through March, 2015, poses a threat of continued criminal activity in the future, and is or was, part of Defendants' regular way of doing business.

90.     Plaintiff was the target of Defendants' scheme to defraud or the Ponzi scheme and reasonably relied to his detriment on the misrepresentations, misleading and false statements made by Defendants MORRISSEY, GALLO, KIM, LMG, MSG, and WBL by causing Plaintiff to invest his money in the Deals described above.

91.     As a direct and proximate result of the state and federal criminal violations set forth above, Plaintiff has suffered damages, including but not limited to loss of Plaintiff's monies in the amount of approximately $400,000.00, loss of use of said property, and non-pecuniary losses, the total amount of which is in excess of $400,000.00.

92.     Pursuant to 18 U.S.C. § 1964, Plaintiff is entitled to recover treble damages, their reasonable attorney's fees and the costs of their action.

93.     As a proximate and direct result of the Defendants' racketeering/criminal acts aforementioned, Plaintiff were damaged in their person and property.

## RACKETEERING ACT TWO

### (*Money Laundering - Violation of Title 18 U.S.C. § 1957 & 2*)

94**.**     In or about and between 2011 and 2015, both dates being approximate and inclusive, within the Southern District of New York and elsewhere, the MORRISSEY, GALLO,

KIM, LMG, MSG, and WBL together with others unknown and members of the criminal Enterprise, knowingly and intentionally engaged in monetary transactions in criminal derived property that was of value greater than $10,000.00 and was derived from specified unlawful activity, to-wit: mail and wire fraud, theft common fraud, fraudulent conveyance or conversion of property, felony theft, by depositing funds into and withdrawing funds out of the financial accounts of Plaintiff, and various federal insured financial institutions, all in violation of Title 18 U.S.C. §§ 1957 and 2.

## OVERT ACTS

95**.**    In furtherance of the conspiracy and to affect the objects thereof, within the Southern District of New York, and elsewhere, the Defendants aforenamed, together with members and participants of the criminal Enterprise and others unknown, did commit and cause to be committed the following overt acts, among others:

a.    Multiple instances of mail fraud in violation of Title 18 U.S.C. § 1341 and 2, on or about and between 2011 and 2015, both dates being approximate and inclusive, regarding the fraudulent taking of Plaintiff's money and property;

b.    Multiple instances of wire fraud in violation of Title 18 U.S.C. §§ 1343 and 2, on or about and between 2011 and 2015, both dates being approximate and inclusive, regarding the fraudulent taking of Plaintiff's money and property;

c.    Multiple instances of money laundering in violation of Title 18 U.S.C. §§1956, 1957 and 2, on or about and between 2011 and 2015, both dates being approximate and inclusive, regarding the fraudulent taking of Plaintiff's money and property;

d.    Multiple instances of using Plaintiff's money to purchase personal items, vehicle(s) and maintaining a lavish lifestyle.

96.    The aforementioned racketeering/criminal acts were interrelated and were part of a common and continuous pattern. The acts were done in furtherance of the goals of the

Defendants aforenamed and the criminal Enterprise.

97.    Defendants and the criminal Enterprise defrauded Plaintiff of his money and property by inducing him to invest his money with Defendants, where Plaintiff reasonably relied to his detriment on the misrepresentations, false and misleading statements and information created or caused to be created and disseminated by Defendants aforenamed.

98.    As a direct and proximate result of the violations of the above cited state and federal criminal statutes, Plaintiff has suffered damages, including, but not limited to, loss of his money and property in excess of $400,000.00, the loss of interest thereon.

99.    Pursuant to 18 U.S.C. 1964, Plaintiff is entitled to recover treble damages, their reasonable attorney's fees and the costs of their action.

100.    As a proximate and direct result of the Defendants aforenamed racketeering/criminal acts aforementioned, Plaintiff was damaged in their person and property.

## RACKETEERING ACT THREE

### *(Money Laundering - Violation of Title 18 U.S.C. § 1956 and 2)*

101.    In or about and between 2011 and 2015, both dates being approximate and inclusive, within the Southern District of New York and elsewhere, the Defendants MORRISSEY, GALLO, KIM, LMG, MSG, and WBL together with members of the Enterprise and others unknown, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, did knowingly, and intentionally conspire to conduct and attempt to conduct financial transactions affecting interstate and foreign commerce which in fact involved the proceeds of specified unlawful activity, to-wit: mail and wire fraud, theft common fraud, felony theft, fraudulent conveyance or conversion of property, *(1)* with the intent to promote the carrying on of the specified unlawful activity and *(2)* knowing that the transactions were designed in whole or part to conceal and disguise the nature, location, source, ownership, and control of such proceeds, in violation of Title 18, United States Code, Sections

1956(a)(1)(A)(i) and 1956(a)(1)(B)(i), all in violation of Title 18, United States Code, Section 1956(h) and 2.

## OVERT ACTS

102.    In furtherance of the conspiracy and to affect the objects thereof, within the Southern District of New York, and elsewhere, the Defendants aforenamed, together with members and participants of the criminal Enterprise and others unknown, did commit and cause to be committed the following overt acts, among others:

a.    Multiple instances of mail fraud in violation of Title 18 U.S.C. § 1341 and 2, on or about and between 2011 and 2015, both dates being approximate and inclusive, regarding the fraudulent taking of Plaintiff's money and property;

b.    Multiple instances of wire fraud in violation of Title 18 U.S.C. §§ 1343 and 2, on or about and between 2011 and 2015, both dates being approximate and inclusive, regarding the fraudulent taking of Plaintiff's money and property;

c.    Multiple instances of money laundering in violation of Title 18 U.S.C. §§1956, 1957 and 2, on or about and between 2011 and 2015, both dates being approximate and inclusive, regarding the fraudulent taking of Plaintiff's money and property;

d.    Multiple instances of using Plaintiff's money to purchase personal items, vehicle(s) and maintaining a lavish lifestyle.

98.    The aforementioned racketeering/criminal acts were interrelated and were part of a common and continuous pattern. The acts were done in furtherance of the overall common goals of the Defendants aforenamed and the criminal Enterprise.

103.    Defendants and the criminal Enterprise defrauded Plaintiff of his money and property by false claims, misrepresentations. Plaintiff reasonably relied to his detriment on the misrepresentations, false and misleading statements and information created or caused to be created and disseminated by Defendants aforenamed.

104.    As a direct and proximate result of the violations of the above cited state and federal criminal statutes, Plaintiff has suffered damages, including, but not limited to, Plaintiff's money in excess of $400,000.00, the loss of interest thereon..

105.    Pursuant to 18 U.S.C. § 1964, Plaintiff is entitled to recover treble damages, their reasonable attorney's fees and the costs of their action.

106**.**    As a proximate and direct result of the Defendants aforenamed racketeering/criminal acts aforementioned, Plaintiff was damaged in their person and property.

107.    By reason of violation of Title 18 U.S.C. § 1962(d) committed by the Defendants aforenamed, the Plaintiff was injured and sustained a loss in excess of $400,000.00, within the meaning of 18 U.S.C. § 1964(c).

108.    The aforementioned racketeering acts were interrelated, and were part of a common and continuous pattern.

109.    The Enterprise has or is likely to commit similar racketeering acts against others individuals who are similarly situated with Plaintiff, as it already has with Plaintiff.  The above-described acts of wire fraud, mail fraud, money laundering and violation of the Travel Act thus constitute a pattern of racketeering activity as defined in 18 U.S.C. § 1961(5).

110.    By reason of the violation of 18 U.S.C § 1962(c) committed by the aforenamed Defendants and as a proximate result of the Defendants' participation in the operation and management of the Enterprise through a pattern of racketeering activity in violation of § 1962(c), Plaintiff has suffered a financial loss and was otherwise injured in an amount in excess of $400,000.00 within the meaning of 18 U.S.C. § 1962(c).

## COUNT II

### (Violation of 18 U.S.C. § 1962(d) by

### Conspiracy to Violate 18 U.S.C. § 1962(c))

111.    The Plaintiff repeats and realleges paragraphs 1 through 76, inclusive as if fully set forth herein of this Complaint.

112.    Section 1962(c) of RICO provides that: "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (1), (b), (c) of this section."

113.    From at least 2011 and continuing through to 2015, the Defendants, MORRISSEY, GALLO, KIM, LMG, MSG, and WBL in violation of 18 U.S.C. § 1962(d), unlawfully and willfully combined, conspired, confederated and agreed with others participants in the Enterprise named and not named herein, to violate 18 U.S.C. § 1962(c), and conducted and participated, directly and indirectly, in the conduct of the affairs of the Enterprise as alleged herein.

114.    In furtherance of the above-described conspiracy, and to affect its objectives, the participants in the Enterprise committed and agreed to commit overt acts or have others commit overt acts on their behalf in the Southern District of New York and elsewhere.

115.    The Defendants MORRISSEY, GALLO, KIM, LMG, MSG, and WBL and participants did conspire to conduct or participate, directly or indirectly, in the conduct of such Enterprise's affairs through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1) (A), (B), (D) & (E) and 1961(5) and 1962(c), to-wit:

(a)    Multiple instances of mail fraud in violation of 18 U.S.C. § 1341 and 1342;

(b)    Multiple instances of wire fraud in violation of 18 U.S.C. § 1343;

(d)    Multiple instances of interstate transportation of persons and of stolen property in violation of 18 U.S.C. § 2314;

(e)     Multiple instances of failure to file Currency Transaction reports in violation of 31 U.S.C. § 5313;

(k)     Multiple instances of money laundering in violation of Title 18 U.S.C. §§ 1956 and 1957.

116.     By reason of violation of Title 18 U.S.C. § 1962(d) committed by the Defendants aforenamed, the Plaintiff was injured and sustained a loss in excess of $400,000.00, within the meaning of 18 U.S.C. § 1964(c).

## RACKETEERING ACT ONE

### *(Mail & Wire Fraud)*

117**.**     In or about and between 2011 and 2015, both dates being approximate and inclusive, within the Southern District of New York, and elsewhere, the Defendants MORRISSEY, GALLO, KIM, LMG, MSG, and WBL, together with members, participants and wrongdoers of the criminal Enterprise, did knowingly, intentionally, and willfully conspire to use and employ manipulative and deceptive devices and contrivances and directly and indirectly *(1)* employ devices, scheme and artifice to defraud Plaintiff; *(2)* to make untrue statements of material facts and omit facts to state facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and *(3)* to engage in acts, practices and courses of conduct which would and did operate as a fraud and deceit upon Plaintiff and the general public, in connection with the fraud and money laundering scheme, and theft of Plaintiff' property and monies, and by use of the instruments of communication interstate commerce and the mails, all in violation of F.S. § 910.15, § 817.034, § 817.03, § 817.15, § 817.40, § 817.41, § 817.411, Title 18 U.S.C. §§1341, 1343 and 2.

## OVERT ACTS

118**.**     In furtherance of the conspiracy and to affect the objects thereof, within the Southern District of New York, and elsewhere, the Defendants MORRISSEY, GALLO, KIM,

LMG, MSG, and WBL, together with members and participants of the criminal Enterprise and others unknown, did commit and cause to be committed the following overt acts, among others:

119.    In or about and between 2011 and 2015, both dates being approximate and inclusive, Defendants aforenamed, together with others unknown, knowingly and willfully used or caused to be used telephones, wires, mails, and others electronic and communication devices to send or caused to be sent, among numerous others, the following:

a.    Multiple instances of Plaintiff sending multiple wire transfer of funds to LMG/MORRISSEY;

b.    Multiple instances of LMG/MORRISSEY sending wire transfers to Plaintiff;

c.    Multiple instances of LMG/MORRISSEY/KIM/WBL sending emails to Plaintiff relating to the Deals described above;

120.    The aforementioned racketeering/criminal acts were interrelated and were part of a common and continuous pattern. The acts were done in furtherance  of the goals of the Defendants aforenamed and the criminal Enterprise.

121.    Defendants, and the criminal Enterprise defrauded Plaintiff of his money and property by Plaintiff reasonably relied to his detriment on the misrepresentations, false and misleading statements and information created or caused to be created and disseminated by Defendants  aforenamed.

122.    As a direct and proximate result of the violations of the above cited state and federal criminal statutes, Plaintiff has suffered damages, including, but not limited to, the loss of money, the loss of interest thereon, distress, mental anguish, and non-pecuniary losses, the total amount which is in excess of $400,000.00.

123.    Each of the above acts of mail and wire fraud, though distinct, were related to one another and had the same or similar intent, results, accomplices, victims or methods of commission, to-wit: to defraud Plaintiff of his money and property by fraudulent representations

of investing and return on said of investments.

124.    Each of the above related violations of New York criminal statutes cited above and federal criminal statutes Title 18 U.S.C. §§ 1341 and 1343 was repeated over a substantial period of time, beginning on or about November, 2011 and continuing through March, 2015, poses a threat of continued criminal activity in the future, and is or was, part of Defendants' regular way of doing business.

125.    Plaintiff was the target of Defendants' scheme to defraud or the Ponzi scheme and reasonably relied to his detriment on the misrepresentations, misleading and false statements made by Defendants MORRISSEY, GALLO, KIM, LMG, MSG, and WBL by causing Plaintiff to invest his money in the Deals described above.

126.    As a direct and proximate result of the state and federal criminal violations set forth above, Plaintiff has suffered damages, including but not limited to loss of Plaintiff's monies in the amount of approximately $400,000.00, loss of use of said property, and non-pecuniary losses, the total amount of which is in excess of $400,000.00.

127.    Pursuant to 18 U.S.C. § 1964, Plaintiff is entitled to recover treble damages, their reasonable attorney's fees and the costs of their action.

128.    As a proximate and direct result of the Defendants' racketeering/criminal acts aforementioned, Plaintiff were damaged in their person and property.

## RACKETEERING ACT TWO

### (*Money Laundering - Violation of Title 18 U.S.C. § 1957 & 2*)

129**.**    In or about and between 2011 and 2015, both dates being approximate and inclusive, within the Southern District of New York and elsewhere, the MORRISSEY, GALLO, KIM, LMG, MSG, and WBL together with others unknown and members of the criminal Enterprise, knowingly and intentionally engaged in monetary transactions in criminal derived property that was of value greater than $10,000.00 and was derived from specified unlawful

activity, to-wit: mail and wire fraud, theft common fraud, fraudulent conveyance or conversion of property, felony theft, by depositing funds into and withdrawing funds out of the financial accounts of Plaintiff, and various federal insured financial institutions, all in violation of Title 18 U.S.C. §§ 1957 and 2.

## OVERT ACTS

130. In furtherance of the conspiracy and to affect the objects thereof, within the Southern District of New York, and elsewhere, the Defendants aforenamed, together with members and participants of the criminal Enterprise and others unknown, did commit and cause to be committed the following overt acts, among others:

a. Multiple instances of mail fraud in violation of Title 18 U.S.C. § 1341 and 2, on or about and between 2011 and 2015, both dates being approximate and inclusive, regarding the fraudulent taking of Plaintiff's money and property;

b. Multiple instances of wire fraud in violation of Title 18 U.S.C. §§ 1343 and 2, on or about and between 2011 and 2015, both dates being approximate and inclusive, regarding the fraudulent taking of Plaintiff's money and property;

c. Multiple instances of money laundering in violation of Title 18 U.S.C. §§1956, 1957 and 2, on or about and between 2011 and 2015, both dates being approximate and inclusive, regarding the fraudulent taking of Plaintiff's money and property;

d. Multiple instances of using Plaintiff's money to purchase personal items, vehicle(s) and maintaining a lavish lifestyle.

131. The aforementioned racketeering/criminal acts were interrelated and were part of a common and continuous pattern. The acts were done in furtherance of the goals of the Defendants aforenamed and the criminal Enterprise.

132. Defendants and the criminal Enterprise defrauded Plaintiff of his money and property by inducing him to invest his money and /or believing his funds were safe and a

payment schedule existed by WBL to pay Plaintiff, with Defendants, where Plaintiff reasonably relied to his detriment on the misrepresentations, false and misleading statements and information created or caused to be created and disseminated by Defendants aforenamed.

133.    As a direct and proximate result of the violations of the above cited state and federal criminal statutes, Plaintiff has suffered damages, including, but not limited to, loss of his money and property in excess of $400,000.00, the loss of interest thereon.

134.    Pursuant to 18 U.S.C. 1964, Plaintiff is entitled to recover treble damages, their reasonable attorney's fees and the costs of their action.

135.    As a proximate and direct result of the Defendants aforenamed racketeering/criminal acts aforementioned, Plaintiff was damaged in their person and property.

**RACKETEERING ACT THREE**

*(Money Laundering - Violation of Title 18 U.S.C. § 1956 and 2)*

136.    In or about and between 2011 and 2015, both dates being approximate and inclusive, within the Southern District of New York and elsewhere, the Defendants MORRISSEY, GALLO, KIM, LMG, MSG, and WBL together with members of the Enterprise and others unknown, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, did knowingly, and intentionally conspire to conduct and attempt to conduct financial transactions affecting interstate and foreign commerce which in fact involved the proceeds of specified unlawful activity, to-wit: mail and wire fraud, theft common fraud, felony theft, fraudulent conveyance or conversion of property, *(1)* with the intent to promote the carrying on of the specified unlawful activity and *(2)* knowing that the transactions were designed in whole or part to conceal and disguise the nature, location, source, ownership, and control of such proceeds, in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i), all in violation of Title 18, United States Code, Section 1956(h) and 2.

32

**OVERT ACTS**

137.    In furtherance of the conspiracy and to affect the objects thereof, within the

Southern District of New York, and elsewhere, the Defendants aforenamed, together with

members and participants of the criminal Enterprise and others unknown, did commit and cause

to be committed the following overt acts, among others:

a.    Multiple instances of mail fraud in violation of Title 18 U.S.C. § 1341 and 2, on

or about and between 2011 and 2015, both dates being approximate and inclusive, regarding the

fraudulent taking of Plaintiff's money and property;

b.    Multiple instances of wire fraud in violation of Title 18 U.S.C. §§ 1343 and 2, on

or about and between 2011 and 2015, both dates being approximate and inclusive, regarding the

fraudulent taking of Plaintiff's money and property;

c.    Multiple instances of money laundering in violation of Title 18 U.S.C. §§1956,

1957 and 2, on or about and between 2011 and 2015, both dates being approximate and

inclusive, regarding the fraudulent taking of Plaintiff's money and property;

d.    Multiple instances of using Plaintiff's money to purchase personal items,

vehicle(s) and maintaining a lavish lifestyle.

138.    The aforementioned racketeering/criminal acts were interrelated and were part of

a common and continuous pattern. The acts were done in furtherance of the overall common

goals of the Defendants aforenamed and the criminal Enterprise.

139.    Defendants and the criminal Enterprise defrauded Plaintiff of his money and

property by false claims, misrepresentations. Plaintiff reasonably relied to his detriment on the

misrepresentations, false and misleading statements and information created or caused to be

created and disseminated by Defendants   aforenamed.

140.    As a direct and proximate result of the violations of the above cited state and

federal criminal statutes, Plaintiff has suffered damages, including, but not limited to, Plaintiff's

money in excess of $400,000.00, the loss of interest thereon..

141.   Pursuant to 18 U.S.C. § 1964, Plaintiff is entitled to recover treble damages, their reasonable attorney's fees and the costs of their action.

142**.**   As a proximate and direct result of the Defendants aforenamed racketeering/criminal acts aforementioned, Plaintiff was damaged in their person and property.

## COUNT III.

### *(Violation of N.Y. GBS. LAW § 349 : NY Code - Section 349: Deceptive acts and practices unlawful)*

143.   Plaintiff repeat and reallege the allegations contained in paragraphs 1 through 76, inclusive, of this complaint as if fully set forth herein.

144.   Defendants made numerous misrepresentations detailed in the preceding paragraphs of this complaint which were deceptive in nature and unlawful and designed to deceive Plaintiff into investing his money in the above Deals.

145.   As a proximate and direct result of the Defendants aforenamed racketeering / criminal acts aforementioned, and misleading and/or misrepresentations, Plaintiff was damaged in their person and property.

146.   As a direct and proximate result of the violations of the above cited state and federal criminal statutes, Plaintiff has suffered damages, including, but not limited to, Plaintiff's money in excess of $400,000.00, the loss of interest thereon..

## COUNT IV.

### *( (Fraud In The Inducement and (Common Fraud)*

147.   Plaintiff repeat and reallege the allegations contained in paragraphs 1 through 76, inclusive, of this complaint as if fully set forth herein.

148.    The statements and representations made by Defendants were false and misleading at the time they were made because Defendants had no intentions investing Plaintiff's money in the Deals described in the preceding paragraphs and/or returning any interest or profit on Plaintiff's investment in the Deals.

149.    Defendants knew the statements and representations described above were false and misleading at the time they were made to Plaintiff. Said statements and representations were made to induce Plaintiff to give Defendants the approximate $400,000.00 to invest in the above described Deals.

150.    Plaintiff reasonably relied on each and every above described representation and statement made by Defendants, to Plaintiff's detriment.

151.    But for the false and misleading statements and representations made by Defendants, Plaintiff would not have invested his money into the Deals or been a victim to Defendants' Ponzi scheme.

152.    Further, Defendants' statements and representations were false and/or misleading and designed to induce Plaintiff into entering into the purposed investment scheme of Defendants which was a Ponzi scheme.

153.    As a proximate and direct result of Defendants' acts of fraud, and executing the scheme to defraud Plaintiff in his property, Plaintiff has been damaged in an amount in excess of $400,000.00.

154.    Further, Defendants committed such acts maliciously, oppressively and fraudulently, with ill will and an evil intent to damage Plaintiff. Plaintiff, therefore reserves the right to seek an award of exemplary and punitive damages in an amount proven at trial.

155.    Plaintiff is entitled to judgment in favor of it and against Defendants on this Count IV for money damages, costs and interest and requests other and further relief this Court deems proper and just.

## COUNT V.

### (Common Law Fraud)

156.    Plaintiff incorporates herein by reference and re-alleges each and every allegation contained in the preceding paragraphs 1 through 76, inclusive of this Complaint as if fully set forth herein.

157.    Each of the Defendants made a false representation of a material existing fact, or a representation as to a material existing fact made with a reckless disregard of its truth or falsity; or concealed a material existing fact, that in equity and good conscience should have been disclosed.

158.    Plaintiff justifiably relied upon Defendants' misrepresentation and was ignorant of the falsity of the representation or of the existence of the fact concealed.

159.    The representation or concealment made or practiced by the Defendants was done so with the intention that it shall be acted upon.

160.    Plaintiff's action on the misrepresentations and/or concealment of a materially existing fact by Defendants resulted in damages to Plaintiffs in an amount in excess of $400,000.00.

161.    Further, Defendants committed such acts maliciously, oppressively and fraudulently, with ill will and an evil intent to damage Plaintiff, therefore reserves the right to seek an award of exemplary and punitive damages in an amount proven at trial.

162.    Plaintiff is entitled to judgment in favor of it and against Defendants on this Count V for money damages, costs and interest and requests other and further relief this Court deems proper and just.

## COUNT VI.

### (Civil Conspiracy)

### (All Defendants)

163.    Plaintiff incorporates herein by reference and re-alleges each and every allegation contained in the preceding paragraphs 1 through 76, inclusive of this Complaint as if fully set forth herein.

164.    Defendant MSG, LMG and MORRISSEY , on the one hand, and WBL, KIM, GALLO, on the other hand, engaged in a conspiracy, the object of which was to defraud Plaintiff of his $400,000.00 through false and misleading statements to Plaintiff.

165.    Defendant MSG, LMG and MORRISSEY , on the one hand, and WBL, KIM, GALLO, on the other hand, had a "meeting of minds" on the goal of to defraud Plaintiff of his $400,000.00 by false and misleading statements and representations. as well as a "meeting of the minds" in the particular course of action required to accomplish that goal.

166.    Defendant MSG, LMG and MORRISSEY , on the one hand, and WBL, KIM, GALLO, on the other hand, committed one or more unlawful overt acts toward accomplishing their goal.

167.    As a proximate and direct result of Defendants' acts of fraud, and executing the scheme to defraud Plaintiff of his property, Plaintiff has been damaged in an amount in excess of $400,000.00.

168.    Further, Defendants committed such acts maliciously, oppressively and fraudulently, with ill will and an evil intent to damage Plaintiff. Plaintiff, therefore reserves the right to seek an award of exemplary and punitive damages in an amount proven at trial.

169.    Plaintiff is entitled to judgment in favor of it and against Defendants on this Count VI for money damages, costs and interest and requests other and further relief this Court deems proper and just.

170.    Plaintiff repeat and reallege the allegations contained in paragraphs 1 through 72, inclusive, of this complaint as if fully set forth herein.

171.    Defendants made numerous misrepresentations detailed in the preceding paragraphs of this complaint which were deceptive in nature and unlawful and designed to deceive Plaintiff into investing his money in the above Deals.

172.    As a proximate and direct result of the Defendants aforenamed racketeering/criminal acts aforementioned, Plaintiff was damaged in their person and property.

173.    As a direct and proximate result of the violations of the above cited state and federal criminal statutes, Plaintiff has suffered damages, including, but not limited to, Plaintiff's money in excess of $400,000.00, the loss of interest thereon.

## COUNT VII.

## BREACH OF CONTRACT

### (Only Defendants MORRISSEY, LMG and MSG)

174.    Plaintiff incorporates herein by reference and re-alleges each and every allegation contained in the preceding paragraphs 1 through 76, inclusive of this Complaint as if fully set forth herein.

175.    Defendants MORRISSEY entered into a written agreement with Plaintiff wherein Defendants induced Plaintiff to invest in capital funding vehicles controlled, managed and operated by MORRISSEY, LMG and MSG.

176.    MORRISSEY, LMG and MSG agreed to return Plaintiff's investments with a high rate of return on a monthly basis. However, MORRISSEY, LMG and MSG failed or refused to make the monthly payments or return Plaintiff's investment described in the preceding paragraphs of this complaint.

38

177.     Defendants MORRISSEY, LMG and MSG have breached the written agreement entered into with Plaintiff. .

178.     As a result of Defendants' breaching the written agreement between the parties, Plaintiff has been damaged in excess of $400,000.00.

179.     Plaintiff is entitled to judgment against Defendants MORRISSEY, LMG and MSG in the amount of $400,000.00, plus costs of this litigation.

<u>**COUNT VIII.**</u>

**BREACH OF CONTRACT**

**(Only Defendants MORRISSEY and WBL)**

180.     Plaintiff incorporates herein by reference and re-alleges each and every allegation contained in the preceding paragraphs 1 through 76, inclusive of this Complaint as if fully set forth herein.

181.     In February, 2015, Defendants MORRISSEY and WBL entered into an oral agreement with Plaintiff wherein Defendant MORRISSEY and WBL promised to pay and in fact presented a payment schedule to Plaintiff wherein Plaintiff would receive a series of payments in order to recover his investments and interest thereon.

182.     Defendants MORRISSEY and WBL failed or refused to make said payments to Plaintiff as promised and agreed to by Defendants MORRISSEY and WBL or return Plaintiff's investment

.     183.     Defendants MORRISSEY and WBL have breached the oral agreement entered into with Plaintiff. .

184.     As a result of Defendants' breaching the written agreement between the parties, Plaintiff has been damaged in excess of $400,000.00.

185.     Plaintiff is entitled to judgment against Defendants MORRISSEY and WBL in the amount of $400,000.00, plus costs of this litigation.

## **PRAYER**

Accordingly, Plaintiff prays that Defendants be required to answer to this complaint, that this action be set for trial at an early date, and that upon the pleadings, evidence presented, and facts determined by the jury, the Court grant judgment to Plaintiff including the following relief.

A.      Injunctive orders, both mandatory and prohibitory (1) requiring Defendants to turnover any and all of Plaintiff's property in Defendants' possession or control or held by third parties on their behalf, and (2) restraining the Defendants, their agents, attorneys and persons acting in concert with them from any future act which directly or indirectly violates or may tend to violate the property rights of Plaintiff.

B.      An award of compensatory damages in accordance with the findings of the jury, together with prejudgment and post-judgment interest as allowed by law, recoverable jointly and severally from all Defendants.

C.      An award of punitive damages in the full amount found by the jury against each of the individual Defendants.

D.      Plaintiff's costs of action, including a reasonable attorney's fee and all reasonable and necessary expenses of litigation, as provided by law, together with post-judgment interest.

E.      All other and further relief to which Plaintiff may show himself entitled to at law or in equity.

## <u>REQUEST FOR JURY</u>

In the exercise of his rights under the Seventh Amendment to the United States Constitution, the applicable statutes and rules of court, Plaintiff respectfully requests that all issues of fact in his several claims for relief by decided by a jury.

December 24, 2016                                   Respectfully submitted,


                                                    *//ss// Peter S. Smith*
                                                    Peter S. Smith, Esq.
                                                    Law Offices of Peter S. Smith, PLLC
                                                    54 Main Street
                                                    P.O. Box 669
                                                    Northport, N.Y. 11768
                                                    Phone: (631) 897-9374
                                                    Fax: (631) 610-3612
                                                    Email: smithlawfirm@msn.com

## <u>VERIFICATION</u>

I, ERNESTO CAPPONE, hereby verify and affirm that the foregoing facts and claims are

true and correct, done under penalties of perjury on this 27th day of December, 2016.


_____
ERNESTO CAPPONE